**ROESER v. COFFER et al.**

No. 13438.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 23, 1936.

Rehearing Denied Nov. 20, 1936.

R. H. Sigler, of Athens, for appellant.

Bishop & Holland, of Athens, for appellees.

SPEER, Justice.

On April 3, 1935, Mrs. S. L. Coffer and her husband, S. L. Coffer, instituted this suit in the district court of Henderson county against W. T. Roeser to cancel a mineral deed executed by the Coffers to Roeser on February 4, 1935, on lands described as being situated in Henderson county, Tex. There is no issue raised as to what lands are involved nor the interest conveyed, and for this reason we shall not go into these details.

For convenience we shall refer to the parties as plaintiffs and defendant as they stood in the trial court.

Plaintiffs alleged ownership of an undivided interest in the lands described, under an inheritance by Mrs. Coffer from her deceased parents; that she lived at Duncan, Okl., and that defendant came to her home and offered to buy a part of her royalty interest in the lands, and represented to her that a well had been drilled near the property; that it was a dry hole and showed no oil; that by the drilling of said well her lands had been condemned as oil-producing property and that it would not likely produce oil; that at the time said statements were made no such well had in fact been drilled near plaintiffs' property and said land had not been thus condemned as oil-producing property, and that defendant well knew his representations were false and that the statements made by defendant were for the purpose of deceiving the plaintiffs; that the plaintiffs did not know defendant's

statements were false, but believed them true and relied upon such representations of defendant, and but for such false representations and plaintiffs' reliance therein they would not have conveyed said mineral rights.

Allegations were further made that the conveyance by plaintiffs was void because the acknowledgment of the plaintiff Mrs. S. L. Coffer was not taken according to law, and that each and all the recitations contained in the certificate of acknowledgment were false and untrue, and that she did not know its contents when she signed it.

Defendant answered with general demurrer, special exceptions, and specially denying that he made the false and fraudulent representations imputed to him by plaintiffs, nor did he conceal from plaintiffs facts which he was under legal obligations to reveal, and that the acknowledgment of Mrs. Coffer was properly taken as provided by law.

The case was tried to a jury and a verdict returned in answers to special issues.

Judgment was rendered for plaintiffs against defendant, rescinding the contract of sale and canceling the deed of conveyance of the mineral rights therein purported to be conveyed; from which judgment the defendant has perfected his appeal, under six assignments of error.

The first assignment complains of the action of the court in failing to sustain certain special exceptions to parts of plaintiffs' petition. The transcript before us shows the exceptions were filed in due order, but it does not appear that they were called to the court's attention or that any judgment or decree of the court was entered thereon, but the matter is attempted to be brought here on written bills of exception to the court's refusal to sustain them. We are not authorized to consider or review the action of the trial court in such matters when thus presented. Rules for practice in the district courts provide at sections 53 and 65 that no bills of exception shall be taken to the judgment of the court on matters of pleading where such judgments constitute a part of the record. The remedy for one aggrieved by such judgments and decrees is to have prepared and presented a full and complete record of the proceedings had, with proper assignments of error to the action of the court as disclosed by that record. It is said in Tex.Jur. vol. 3, p. 575,

§ 404: "The action of the trial court on demurrers or special exceptions to pleadings need not and cannot be preserved by a bill of exceptions, but must be affirmatively shown by a judgment or order entered of record and included in the transcript." To the same effect are the following cases: Williams v. Trinity Gravel Co. (Tex.Civ.App.) 297 S.W. 878; Epting v. Nees (Tex.Civ.App.) 25 S.W.(2d) 717; Hall v. Williams & Ellis (Tex.Civ.App.) 267 S.W. 520; Miller v. Shelby County Inv. Co. (Tex.Civ.App.) 30 S.W.(2d) 668.

Defendant's second assignment of error is based upon the refusal of the trial court to instruct a verdict in his favor at the conclusion of the testimony. The evidence offered by the respective parties was conflicting as to the representations made by defendant at the time he procured the mineral deed.

The facts shown about which there is no dispute are substantially that Mrs. Coffer was one of four heirs who had inherited the lands in controversy; that, when Mrs. Coffer's mother married a second time, approximately 30 years before the date of the transaction in controversy, she was taken by an uncle to another part of the state and reared, and had known nothing of oil developments in the vicinity of her lands during that time; that she lived in Oklahoma about 200 miles from the land and had not seen it in nearly 17 years and knew nothing about oil developments there; that defendant was a buyer, seller and developer of oil properties and had previously procured a lease from plaintiffs on this property for its proposed development for oil; and that, with a view to purchasing a part of the royalty of Mrs. Coffer, the defendant went to her home at Duncan, Okl., and conferred with her about its purchase.

There is a very marked conflict in the evidence as to what took place during the negotiations. The plaintiffs and a disinterested witness named Brazil testified in substance that defendant told plaintiffs that their land had been condemned as oil-producing property by the drilling of a dry hole near it; in some instances the witnesses expressed it as being in that locality or vicinity, but more frequently saying it was near their land; that it had no value as oil land; that it was proven to be dead; that there was no prospecting for oil going on in that locality,

it had been proven their land would not produce oil; that royalty on the land had no market value; that it just was not selling; and that no trading was going on there. The plaintiffs testified they knew defendant was acquainted with the situation and believed he was telling them the truth; that they did not believe he was trying to cheat them out of their property and relied upon his statements; that they were very poor financially, had had a son badly burned and had incurred expenses in his treatment which they could not pay, and that the defendant said that on this account he wanted to help them and would just give them $50 for the mineral deed; that they needed the money so badly they accepted it and executed the deed.

The defendant denied making the statements testified to by plaintiffs and the other witness, but said he told them there had been an outpost well drilled near Cross Roads which was dry or produced salt water, and leases north of plaintiffs' property were not very valuable; that he did not tell them a well had been drilled near their property nor that their land would not produce oil, in fact denied all the material matters testified to by plaintiffs and Brazil. He testified he actually paid $200 for the mineral deed instead of the $50 testified to by plaintiffs. He admitted he knew, however, that negotiations were then under way by which what was known as the Worsham well No. 1 was to be drilled soon on property adjoining that of the plaintiffs and that he told plaintiffs of this. He said the reason he went to Oklahoma to purchase royalty from plaintiffs instead of trying to purchase from persons residing in the vicinity of the property was because he knew many of those near there had sold royalty and perhaps would not sell any more.

As before stated, the case was submitted to the jury on special issues, the purport of which and their answers pertaining to the disputed parts of the evidence mentioned were: (a) That the defendant represented to plaintiffs a dry hole had been drilled near their property; (b) that plaintiffs believed the representations of defendant to be true; (c) that plaintiffs relied upon the truth of defendant's statement that a well had been drilled near their property and that it was a dry hole; (d) that the statements so relied upon by plaintiffs were false.

■■ It is needless to say that the function of a jury is to pass upon the facts as presented by conflicting evidence adduced by the respective parties. The defendant was asking for an instructed verdict in his favor. To determine whether or not the evidence is sufficient to support a verdict in favor of the successful party, the test seems to be as stated in Tex.Jur. vol. 17, pp. 910, 911, § 410 which says: "If discarding all adverse evidence, and giving credit to all evidence that is favorable to the successful party and indulging every legitimate conclusion that is favorable to him, a jury might have found in favor of him, then it is to be concluded there is evidence to support the verdict." A corollary to the above rule would be that, if there was sufficient evidence to support the verdict for plaintiffs, if one should be so rendered, then it was proper to refuse to instruct one in favor of the defendant. We therefore overrule the assignment raising the question in this case.

■■ By his third assignment of error defendant complains that the court did not define the word "near" in connection with special issue No. 1, which reads: "Do you find from a preponderance of the evidence that the defendant W. T. Roeser represented to Mrs. S. L. Coffer that a well had been drilled near her property resulting in a dry hole." This issue was answered "Yes."

Defendant requested an explanatory charge reading: "You are instructed that the word 'near' as hereinafter used is a relative term whose import can only be determined by the surrounding facts and circumstances and same may mean various distances."

Rev.Civ.Stat. art. 2189, which authorizes the submission of cases on special issues, provides, among other things: "In submitting special issues the court shall submit such explanations and definitions of *legal terms* as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues." (Italics ours.) We do not consider the word "near" a legal term or expression, but is an ordinary word of simple meaning, in common use, one which any ordinary person would understand its meaning. The explanation proposed by defendant would

require perhaps more explanations than would the one given by the court. By the proposed explanation the words "relative term" and "import" are used, and no doubt would be more difficult for the average juror to comprehend than would the word "near." We have not been cited to any decision of this state requiring an explanation of such words, and we are not inclined to extend the rule any farther than has already been done.

In Robertson & Mueller v. Holden (Tex.Com.App.) 1 S.W.(2d) 570, on this point the court said: "In the nature of things, the statute has not attempted to declare what 'legal terms' shall be explained or defined further than 'shall be necessary to enable the jury to properly pass upon and render a verdict on such issues.' Reasonable necessity, considering the term or terms used, then, should be the test. Ordinary words of simple meaning, of course, need not be defined. But those terms which in law have a distinct fixed meaning which an ordinary person would not readily understand should, upon proper request, be defined." The above-announced rule was expressly approved in the late case of Dallas Ry. & Terminal Co. v. Bankston (Tex.Com.App.) 51 S. W.(2d) 304, 309. We do not consider there is any merit in the assignment, and it is overruled.

 The action of the court in overruling defendant's objections and exceptions to the main charge is given as assignment of error No. 4, and incorporated in the assignment is a copy of the objections and exceptions filed by him to the charge, before being given. This assignment is too general in its nature to warrant us in undertaking to review the numerous objections raised, some of which are not brought forward by proper assignments, while other parts are specifically assigned, and which we have either already discussed or will do so in other parts of this opinion.

Plaintiffs' objection to consideration by us of this assignment of error is in these words: "Our statute and the rules require that specific error be assigned. An appellant is not permitted to take a pot shot with an omnibus scatter gun, but must single out each supposed error, and assign errors separately. The fourth alleged error in appellant's brief violates all legal requirements and should not be considered."

Under this assignment defendant has discussed some very interesting questions pertaining to whether or not the representations alleged to have been made by defendant were in fact expressions of opinion or did they purport to be statements of facts within his knowledge, and, while we are loath to deprive a litigant of a full, free, and complete opportunity to present every proposition deemed by him important to his rights, we are bound by the rules of procedure in such matters, and we do not have the option to suspend them; for to do so would be to abrogate the procedure of which the bench and bar must take cognizance. We cannot assume the responsibility for the manner in which a record is made from which we must pass upon the rights of parties. In his objections and exceptions to the court's charge, the defendant, as is often done by counsel, as a matter of precaution, presented many reasons why the charge should not be given, all of which reasons and objections were copied into and made a part of the assignment of error under consideration. In the nature of things, this makes the assignment multifarious, and too general to warrant its consideration. We therefore have not undertaken to pass upon the matters discussed by counsel under this assignment and express no opinion as to their merits; there is no fundamental error apparent and the assignment is overruled.

 By his fifth assignment of error the defendant complains that the court refused to give his requested issue as follows: "Do you find from a preponderance of the evidence that the Notary Public failed to take the acknowledgement of Mrs. S. L. Coffer to the mineral deed in question privily and apart from her husband."

As we have shown in the preceding part of this opinion, one of the grounds upon which plaintiffs sought to cancel the mineral deed was because the acknowledgment of the wife was not taken in accordance with the law applicable to that of married women.

We think there was no error in refusing the requested issue, first, because it did not embrace all the elements of an acknowledgment by a married woman, under the laws of this state; second, because there was no accompanying requested issue or issues which would cover other essential elements of a valid acknowl-

edgment; third, because the requested issue was only one presenting an evidentiary fact issue to the ultimate issue of whether or not the acknowledgment was properly taken. The requested issue if answered either "yes" or "no" would not have been sufficient for the court to determine if the acknowledgment had been properly taken. It was just as essential to the validity of the acknowledgment that it be shown the signer was known to the notary public as being one of the persons who had executed the instrument, that she had had the instrument fully explained to her, that thereafter she had acknowledged such instrument to be her act and deed, that she had declared that she had willingly signed it, and that she did not wish to retract it, as it was to show she had been "examined privily and apart from her husband."

The issue submitted by the court touching this point reads: "Do you find from a preponderance of the evidence that the husband of Mrs. S. L. Coffer was present at the time the Notary Public purported to take her acknowledgment to the Mineral Deed in question?" The jury answered the question "Yes."

In Speer's Special Issues, at page 371, the author says: "From these considerations it follows the request (of an issue) must not be alone for one of the essential elements of a cause of action or defense, it must embrace them all. Thus if the action be negligence, it is not enough to request the issue whether or not the defendant did the particular thing complained of, it must further request the submission of negligence, proximate cause or effect, injury and damages, where these are controverted questions * * * in short the request should be such as that it would be the duty to submit it as presented." This rule was followed in the case of Beverly v. Siegel (Tex.Civ.App.) 51 S.W.(2d) 743.

The rule is tersely stated in Tex.Jur. vol. 41, p. 1050, § 245, in this language: "They should be ultimate fact issues, and not merely evidentiary. * * * To put the trial court in error for refusing the request, it must be correct as to the law, and complete as to the elements of the cause or defense. * * * The court will refuse a requested issue if favorable finding would not be sufficient to sustain the ground of recovery or defense." For the reasons shown we overrule the assignment.

The last and final assignment of error by defendant complains of the admission by the court of evidence as to the market value of the mineral rights in question, at the date of the trial, contending it should have been based upon the date of the sale. There can be no question of the correctness of defendant's contention. We see no issue in the case that would call for a finding of the market value of the property except that to show a right of rescission of contract damages must have followed the fraud alleged. There are other parts of the evidence which sufficiently show this without a consideration of that part complained of, and, in the absence of a showing that defendant's rights were prejudiced by the admission of the testimony, and in view of the fact the objectionable testimony was not material to the issues under consideration, the error in its admission was harmless. We do not consider the objectionable testimony contributed anything to the verdict of the jury and the judgment rendered.. The assignment is therefore overruled.

We find no error in the record to warrant a reversal of the judgment of the trial court, and it must be affirmed.

The judgment of the trial court is affirmed.